UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SCOTT BARNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-072 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

On January 30, 2018, Plaintiff Scott Barnett filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his applications for social security disability benefits [DE 1]. Although Barnett filed applications for both disability insurance benefits and supplemental security income, this appeal only concerns the denial of Barnett's application for disability insurance benefits based on the determination that Barnett was not disabled on or before December 31, 2013 (which represents the date that Barnett was last insured). The matter is briefed and ripe for decision [DEs 17-19]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Barnett alleges that as of October 28, 2013, he has been rendered disabled on account of a host of physical issues, including a reflux/esophageal impairment, bilateral hip avascular necrosis (this is, death of bone tissue due to a lack of blood supply), bilateral knee arthritis, and degenerative disc disease. Most relevant to this appeal is Barnett's reflux/esophageal impairment and the Administrative Law Judge's ("ALJ") discounting its claimed severity. Interestingly, the ALJ's version of Barnett's medical history with respect to his reflux/esophageal problem [DE 12

at 23-24] stands in contrast to the Commissioner's summary [DE 18-1 at 2] and the actual evidence of record.

More specifically, the ALJ explained that, "[t]he record indicates the claimant also began to have complaints of regurgitation and reflux in 2014." Diagnostic tests revealed that Barnett suffered from gastroesophageal reflux and a hiatal hernia, for which Barnett underwent a laparoscopic fundoplication in October of 2014. Following the surgery, Barnett was noted as "doing well." According to the ALJ, it wasn't until 2016, when Barnett developed worsening dysphagia and endured significant weight loss due to difficulties with swallowing. The ALJ then wrote: "As a result, the claimant underwent nine dilations and two stents. (Exhibit B19F). However, a CT scan of his chest in September of 2016 revealed [that] the second stent was grossly patent, and the claimant reported [that] his dysphagia had improved after the last stenting procedure (Exhibit B19F/6)." The ALJ further noted that since Barnett's alleged onset date, his records showed that his abdomen was making normal bowl sounds and his neck appeared normal.

On the other hand, the Commissioner's brief medical summary of Barnett's reflux/esophageal impairment states: "Plaintiff had no vomiting as of April 18, 2013 and June 5, 2014 (Tr. 436, 468). The record documents 'worsening reflux' as of July 7, 2014, with multiple surgeries thereafter, and even more worsening of symptoms in 2016 (Tr. 23, 540, 772-86)."

Clearly then, the ALJ's version indicates that Barnett's reflux/esophageal problems only started in 2014, but was treated by October 2014 to the point that Barnett was "doing well" up until 2016. On the other hand, the Commissioner's version indicates that Barnett's reflux/esophageal impairment became "worse" by July 2014, and that despite continual treatment (including "multiple" surgeries), the condition continued to become progressively worse.

The actual record evidence concerning Barnett's gastroesophageal reflux disease and esophageal stricture indicates that Barnett quit working in October 2013 as a limo driver because he could not handle his back pain, hip pain, and leg numbness which was caused from too much sitting and lifting of luggage (R. at 42). Barnett also testified[1] that he could not have handled a fulltime job that required mostly sitting, with a sit-stand option, because his reflux/esophageal problems caused him to unpredictably vomit three or four times every day for no apparent reason (R. at 44). In fact, when he was chauffeuring passengers, he tried to vomit in a cup. Barnett's testimony was consistent with the complaints that he made to his treating doctors in June through September 2014 (R. at 535, 540, 600, 619, 693). An esophagogram from July 24, 2014, evidenced that Barnett suffered from gastroesophageal reflux (R. at 599). Barnett's symptoms served as the basis for his undergoing a laparoscopic fundoplication in October 2014 (R. at 688-93). However, Barnett indicated that the surgery didn't help (and this fact was repeatedly documented in his medical records). Rather than vomiting food, he began vomiting bile and lost forty pounds after not being able to eat for almost a year (R. at 47-52, 709-70).

Barnett's medical records also reveal that since 2014, he has had approximately ten procedures to dilate or stretch his esophagus, including the placement of two esophageal stents and a five-day hospitalization wherein he was diagnosed with dysphagia, epigastric abdominal pain, vomiting, unintentional weight loss, and a history of gastroesophageal reflux disease. The placement of the second stent allowed him to at least eat soft foods, but he still vomited. By late 2016, Barnett had suffered from several years of chronic vomiting (up to eight times a day) and was scheduled to have an esophago-gastrectomy with reconstruction (or as Barnett put it, a

---

[1] A hearing was held on October 13, 2016, before ALJ Cynthia Bretthauer, during which, testimony was provided by Barnett and a vocational expert ("VE").

3

"rebuild[ing]" of his esophagus) (R. at 46-47, 777). Because of Barnett's esophageal problem and inability to eat, he continually has very little energy (R. at 59-63, 774). These symptoms, in addition to his ongoing pain, have caused Barnett to rest up to eighteen hours a day in a recliner (R. at 59). Barnett confirmed for the ALJ that he intended to go through with the esophago-gastrectomy with reconstruction, as scheduled (R. at 47).

On July 24 and September 27, 2014, reviewing state agents opined that Barnett's projected residual functional capacity ("RFC")[2] as of October 27, 2014 (or, twelve months after Barnett's onset date) would indicate that Barnett could perform sedentary work (R. at 91-108, 111-30). Accordingly, Barnett's applications were denied initially and on reconsideration.

At the hearing before the ALJ, the VE's testimony was based strictly on the (relevant) hypothetical posed to him, which offered an assigned RFC of sedentary work, limited by various exertional and environmental limitations (none of which pertained to additional time for breaks or being off-task) (R. at 64-71). Per the VE, with this RFC in mind, Barnett would be able to perform work as an ampoule sealer, telephone quote clerk, and charge account clerk.

The ALJ issued a decision on December 21, 2016, denying Barnett disability benefits and concluding that he was not disabled under the Social Security Act because he was able to perform other work in the economy. However, because the ALJ determined that Barnett was capable of performing only sedentary work, once Barnett turned fifty years old on August 4, 2015, the ALJ recognized that Barnett was automatically deemed disabled by reason of his age and the direct application of Medical-Vocational Rule 201.14.

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

The Appeals Council then denied Barnett's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Barnett seeks review of the Commissioner's decision that he was not disabled on or before December 31, 2013 (and until his fiftieth birthday), thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez,* 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ

must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and

whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### IV. ANALYSIS

Barnett raises various arguments in support of reversal and remand (but not an outright award of benefits). First, Barnett argues that the ALJ's RFC finding lacks sufficient support because the ALJ did not adequately explain her reasons for discrediting Barnett's subjective complaints, and because the ALJ's reliance on the state agents' projected RFC opinions lacked sufficient foundation. Second, Barnett contends that the ALJ erred in giving his treating pain doctor's RFC assessment "little evidentiary weight." Third, Barnett argues that the ALJ's failing to identify a single listing at step two was too perfunctory of an analysis to permit informed review. Fourth, Barnett contends that the jobs identified by the VE were either inconsistent with the ALJ's designated RFC finding or have become obsolete. For the reasons that follow, the Court agrees that remand is required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. Given this shortcoming, the Court leaves it to the parties to address the remaining issues on remand.

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator

7

evaluated the symptoms. SSR 16-3p[3] (superseding SSR 96-7p); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id*.; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

With respect to Barnett's claimed limitations resulting from his unpredictable vomiting, involuntary weight loss, and fatigue, the ALJ failed to adequately articulate how she evaluated Barnett's limitations and failed to consider evidence supporting the claimed limitations. First, the ALJ provided the often-criticized boilerplate language to summarily discredit all of Barnett's subjective complaints, by stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

(R. at 23). This generic language does not explain or direct this reviewing Court to the information relied on by the ALJ in making her credibility determination. *See Pepper,* 712 F.3d at 367–68 (7th Cir. 2013); *see also Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir.2012) (noting that an ALJ's finding a claimant to be 'not entirely credible' fails to inform the court of

---

[3] The Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version the outcome in this case would be the same.

8

the specific evidence considered in determining the claimant's credibility and fails to link the ALJ's conclusions to the evidence in the record). However, because the ALJ's mere use of boilerplate language does not automatically undermine the ALJ's ultimate conclusion, the Court considers the other information identified by the ALJ as a basis for attempting to justify her credibility determination. *See id.*

In this case, the ALJ discounted Barnett's allegations regarding the limiting effects of all of his impairments because Barnett's medical records revealed that he has been in "no acute" distress, he reported being fairly active in 2014, and he tried "numerous treatment modalities . . . [which] have been beneficial and have provided at least some relief of [his] symptoms." (R. at 24). But the medical records cited by the ALJ as the basis for her credibility determination actually show the following notations with respect to Barnett's reflux and esophageal problems: Barnett's surgery allowed him to resume a soft diet without vomiting, but shortly thereafter he continued to have "problems with his stomach" and he couldn't swallow anything other than water; Barnett had esophageal and gastric surgery, but he needs additional surgery; Barnett is having a lot of GI problems and he suffers from dry heaves; Barnett has lost thirty pounds and is still having "constant problems with esophageal stenosis;" and, by late 2016, the treating doctor opined that the only surgical option for Barnett was an esophago-gastrectomy with reconstruction (R. at 695, 697, 701, 709-71, 777, 839-53). In addition, these same medical records relied on by the ALJ to discredit Barnett's subjective complaints, explicitly document Barnett's being tired, weak, ill, and inactive. Furthermore, while it may have been observed that

Barnett appeared in "no acute distress" at times,[4] many of these same examinations documented Barnett's chronic and unresolved reflux and esophageal problems (as just identified).

Here, if the ALJ had properly characterized the evidence and considered the cumulative effect of Barnett's reflux and esophageal symptoms in assessing Barnett's credibility (and then in deriving the RFC), the case could have gone the other way. *See Spaulding v. Halter*, 11 F. App'x 596, 601 (7th Cir. 2001) (citing *Dix v. Sullivan*, 900 F.2d 135 (8th Cir. 1990) (claimant who suffered from frequent nausea, fatigue, diarrhea, and abdominal pain was disabled)). This is especially true in light of Barnett's assertion that as of October 2013, he could not have even performed a fulltime sedentary job with a sit-stand option because of his reflux/esophageal problem and lack of energy, not to mention his need to lie down. *See id.* at 138 ("A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."). And, there is nothing in the ALJ's decision to support that any limitation imposed in the RFC was specifically intended to accommodate Barnett for the time that he would be off-task when the unpredictable vomiting occurred or for the extra time that he would require due to fatigue. This deficiency warrants reversal of the ALJ's decision. *See* SSR

---

[4] Notably, these records do not provide an explanation for what the medical professionals meant by "no acute distress," so that the ALJ could rightfully assume that the notations meant that Barnett did not experience limitations to the degree that he alleged. *See, e.g., Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) (noting that "acute" can refer to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course; and, for physicians' purposes, "no acute distress" can simply mean that a patient will probably not become unstable in the next five minutes).

96–8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts").

The Court would further note (as plaintiff's counsel points out) that the state agents' projected RFC determinations dated July and September 2014, were provided *before* Barnett ever had his initial laparoscopic fundoplication in October 2014, and *before* Barnett underwent a series of related procedures for his reflux and esophageal problems. In fact, neither the state agents, nor the ALJ, would have had the benefit of knowing the results of Barnett's esophagogastrectomy with reconstruction. While the ALJ acknowledged that medical evidence post-dated the state agents' opinions, she then mischaracterized that evidence as not showing a worsening of Barnett's condition (R. at 24). Yet, even the Commissioner acknowledged that the record documented Barnett's "worsening reflux" as of July 7, 2014, with multiple surgeries thereafter, and a further worsening of his symptoms in 2016. Thus, consistent with the Commissioner's observation and this Court's review, the record evidences that Barnett's reflux and esophageal issues were present by October 2013 (which, was before his date last insured), and seemed to get progressively worse. Because evidence existed which indicated that Barnett's issues were not resolved and that he continued to suffer from limitations as of December 31, 2013, it was the ALJ's responsibility to recognize the need for further medical evaluations of Barnett's condition before making her RFC assessment. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000).

As indicated, remand is required because the RFC analysis was affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. *See Pepper,* 712 F.3d at 367; *Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371. An inadequately supported RFC determination prevents the Court from discerning whether the limitations caused by Barnett's

11

reflux and esophageal issues, along with his resulting fatigue, should have been incorporated into the questions posed to the VE. *See Herron v. Shalala,* 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain her analysis of the evidence with enough detail and clarity to permit meaningful review). Ultimately, because the ALJ's assessment of Barnett's RFC is not supported by substantial evidence, the determination cannot stand.[5] 42 U.S.C. § 405(g); SSR 96–8p.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: March 15, 2019

/s/ JON E. DEGUILIO<br>Judge<br>United States District Court

---

[5] Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Barnett's claimed (and potentially credible) limitations. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Barnett could perform before he turned fifty years old, and so the conclusions reached at steps four and five cannot be affirmed. *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p.